IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRIAN LEE WALKER                    *
#942844                             *
                                    *
                    Plaintiff,      *
v.                                  *           No. 4:24-cv-00036-JJV
                                    *
HEATHER MEADOWS,                    *
Lieutenant, WCDC, *et al.*          *
                                    *
                    Defendants.     *

**MEMORANDUM AND ORDER**[1]

## I.    INTRODUCTION

Brian Lee Walker ("Plaintiff") has filed this *pro se* action, pursuant to 42 U.S.C. § 1983, alleging Defendants violated his constitutional rights at the White County Detention Center ("WCDC").  (Doc. 7.)  Plaintiff says: (1) Officer Christopher Dunn and Lieutenant Heather Meadows used excessive force against him on August 23, 2023, during evening pill call; (2) Sergeant Caleb Miller failed to protect him from that use of force; (3) Lieutenant Meadows, Officer Dunn, Sergeant Miller, and LPN Nurse Katy Williams denied him adequate medical care for his injuries; and (4) Sheriff Phillip Miller and Jail Administrator Clayton Edwards knew about the inadequate medical care but failed to take corrective action and properly train and/or supervise the other Defendants.  Plaintiff brings these claims against Defendants in their official and individual capacities.[2] And he seeks $900,000 in compensatory and punitive damages.

---

[1] On May 3, 2024, the parties consented to proceed before me. (Doc. 26.)

[2]  In her Brief, Defendant Williams says it is "unclear" if she is being sued in both her official and individual capacities.  (Doc. 46 a 1.)  But Plaintiff checked the box on his Amended Complaint form indicating he was bringing both types of claims.  (Doc. 7 at 2.)

LPN Williams has filed a Motion for Summary Judgment. (Docs. 44-46.) And the Officer Dunn, Lieutenant Meadows, Sergeant Miller, Sheriff Miller, and Jail Administrator Edwards ("County Defendants") have also filed a separate Motion for Summary Judgment.[3] (Docs. 48-52, 56.) Plaintiff has not responded to either Motion, and the time to do so has expired. Thus, the facts in Defendants' Statement of Undisputed Facts are deemed admitted. *See* Local Rule 56.1(c); *Jackson v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001) (pursuant to Local Rule 56.1(c), a plaintiff who failed to respond to the motion for summary judgment "forfeited her ability to contest the facts presented" by the defendant). And, as will be explained herein, those facts are supported by the record. After careful consideration and for the following reasons, Defendants' Motions will be GRANTED, Plaintiff's claims against them DISMISSED with prejudice, and this case CLOSED.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must

---

[3] LPN Williams's Motion includes 289 pages of grievances and medical records, many of which are irrelevant to this lawsuit. (Doc. 44-1; Doc. 44-2.) And the County Defendants' Motion includes 65 pages of grievances, with only a portion being relevant. (Doc. 50-1.) In the future, it would be helpful if Defendants included only <u>relevant</u> records with their Motions.

demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.    FACTS[4]

In August 2023, Plaintiff was in custody at the WCDC for a probation violation and housed on the second floor of a disciplinary pod. (Doc. 7; Doc. 50-2.) On August 21, 2023, Plaintiff slipped and fell while walking up the stairs in that pod because the floor in the common area was wet. (Doc. 44-1 at 30-50; Doc. 44-4 at 7, 13-15.) Jailers took Plaintiff to a local hospital where he received a spinal CT and a pelvic x-ray showing no injuries. (Doc. 44-1 at 30-50.) Based on Plaintiff's subjective complaints of pain, doctors diagnosed tailbone and cervical sprains and released Plaintiff in good condition. Upon returning to the WCDC later that day, Plaintiff refused to be examined by WCDC medical personnel. (*Id.*) And on August 23, 2023, around 1:00 p.m., Plaintiff refused to allow Nurse Williams to conduct a follow-up exam. (*Id.* at 51.)

What happened on August 23, 2023 during evening pill call is partially captured on Officer

---

[4] The following facts are taken from Defendants' Statement of Facts (Docs. 45, 50); Plaintiff's medical records (Doc. 44-1); Plaintiff's Medical Requests (Doc. 44-2); Plaintiff's deposition (Doc. 44-4); and affidavits signed by Defendants Williams (Doc. 44-3), Edwards (Doc. 50-1); Meadows (Doc. 50-2), and Sergeant Miller (Doc. 50-3). Defendant Dunn did not file an Affidavit.

Dunn's and Sergeant Miller's body cameras, which contain video and audio. (Doc. 56.) Officer Dunn's body camera starts at 7:54 p.m. with him escorting Plaintiff from his cell, down the stairs, through the pod common area, out a door, and into the infirmary. Once there, Plaintiff argued with LPN Williams about whether she had given him all of his medications. And he accused her of being a racist. Plaintiff then approached Officer Dunn with his mouth open to demonstrate he had swallowed his pill. Officer Dunn lightly touched Plaintiff's chest and ordered him to step back. Plaintiff yelled at Officer Dunn, falsely accused him of punching him, and asked him if he too was a racist. Officer Dunn then ordered Plaintiff to return to his cell several times.

After initially refusing, Plaintiff walked out of the infirmary and back into the common area while falsely accusing Officer Dunn of pushing him. (Doc. 56.) At the base of the stairs, Plaintiff turned toward Officer Dunn and refused to go up because he fallen two days earlier walking up the same stairs. Officer Dunn again ordered Plaintiff to go up the stairs and back to his cell. After protesting, Plaintiff began to climb the stairs in a deliberately slow manner while yelling to Officer Dunn that he was going to take his time. Plaintiff periodically stopped and taunted Officer Dun that he would have to "drag" him up. Officer Dunn then approached Plaintiff's left side. The camera angle does not capture where Officer Dunn touched Plaintiff, and he has not filed an affidavit or incident report explaining what happened. However, during his deposition Plaintiff said Officer Dunn "reached up" under his arm and began "pulling" him up the stairs, causing Plaintiff to come out of his "slippery shoes" and fall down the stairs. (Doc. 44-4 at 8, 21-22.) Officer Dunn's body camera shows Plaintiff slide down five to six steps, feet first, on his left side. (Doc. 56.) He did not tumble or roll, as Plaintiff claimed in his deposition. (*Id.*; Doc. 44-4 at 8.) And he never let go of a piece of paper in his left hand.

Officer Dunn called for back-up assistance, as Plaintiff, who had no visible injuries,

remained still at the bottom of the stairs dramatically demanding that no one touch him and that he be taken to a doctor. (Doc. 56). Lieutenant Meadows and Sergeant Miller, who responded to the call for back-up assistance, stood at the base of the stairs near Plaintiff. Defendants gave Plaintiff several direct orders to stand up. Plaintiff refused, claimed the fall had exacerbated his August 21, 2023 back injuries, and demanded to be taken back to the hospital. Lieutenant Meadows ordered Officer Dunn to move Plaintiff's belongings from the second floor to a first floor cell where he was being reassigned. As Officer Dunn was doing so, Lieutenant Meadows called someone on a cell phone, went to the infirmary, confirmed from Plaintiff's medical records that he did not have any preexisting injuries, and returned to the base of the stairs.[5]

Sergeant Miller's body camera starts at 8:02 p.m. (Doc. 56.) Both Sergeant Miller's and Officer Dunn's body cameras show Plaintiff lying still on the bottom of the stairs exhibiting no visible injuries or physical signs of pain. Nevertheless, Plaintiff proclaimed he could not walk and that Defendants would have to "drag" him to his new cell on the first floor. After several minutes of Plaintiff's refusal to move, Lieutenant Meadows grabbed Plaintiff's left wrist, Officer Dunn grabbed his right wrist, and the two officers slowly dragged Plaintiff on his back to his new cell as he howled in exaggerated pain. While entering the cell, Plaintiff's right hip lightly contacted the door frame, and he began to complain of hip pain. Both videos end with the Defendants leaving Plaintiff in his first floor cell at 8:05 p.m. During his deposition, Plaintiff said that after the officers left, he cleaned the cell and washed the walls. (Doc. 44-4 at 9.)

---

[5] In her Affidavit, Lieutenant Meadows does not explain who she called during the incident. (Doc. 50-2.) In his Affidavit, Jail Administrator Edwards says he was not present during the incident and that he cannot recall if he spoke to Lieutenant Meadows on the phone during the matter. (Doc. 50-1.)

Sergeant Miller's body camera starts again at 9:53 p.m. that evening when he opened the door to Plaintiff's cell and told him to pack his property so that he could be moved to the second floor. (Doc. 56.)  Plaintiff, who was calmly sitting on his bunk in no apparent physical distress, got up, gathered some papers that he carried in his left hand, and walked up the stairs - quicker than he did two hours earlier - without difficulty.  And, importantly, he did not report pain or ask for medical assistance at that time.  The video ends at 9:56 p.m. with Sergeant Miller closing the cell door.

On August 25 and 29, 2023, Plaintiff refused medical care at the WCDC from Nurse Williams and a non-party.  (Doc 44-1 at 65-66.)  On August 30 and September 1, 2, and 4, 2023, Plaintiff filed medical request forms reporting pain in his back, tailbone, left side, left knee, and elbow.  (Doc. 44-2 at 4-7.)  But he did not report any hand injuries.  The floater nurse instructed Plaintiff to submit sick call requests, but it does not appear that he did so.

On September 11, 2023, which was nineteen days after his August 23, 2023 fall, Plaintiff got into a fight with two other detainees "until both of [his] hands were swollen." (Doc. 44-4 at 10.)  The following day, Plaintiff was taken to a local hospital where tests revealed he had a fractured left ring finger, but no other injuries.  (Doc. 44-1 at 67-98.)  Plaintiff received a finger splint, over the counter pain medications, and instructions to follow up with an orthopedic surgeon. And he returned to the WCDC later that day.  (*Id.*) Thereafter, Plaintiff refused medical treatment at the WCDC on several occasions.  In October and November 2023, Plaintiff was examined by orthopedists, who instructed Plaintiff to wear a splint, take over the counter pain medications, and begin extension exercises for his left ring finger.  (Doc. 44-1 at 105-08, 115-116.)  Surgery was not recommended.

IV.    **ANALYSIS**

A.    **Individual Capacity Claims**

The County Defendants argue they are entitled to qualified immunity from Plaintiff's request for monetary damages from them in their individual capacities.  Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lockhart v. Siloam Springs*, 113 F.4th 844, 847 (8th Cir. 2024); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021).  Whether qualified immunity applies to this case is a question of law, not fact, for the court to decide.  *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019).

Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a violation of his constitutional rights; or (2) that constitutional right was not clearly established such that a reasonable official would not have known his or her actions were unlawful.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021).  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson* 555 U.S. at 236; *Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019).  I agree with County Defendants' that they are entitled to qualified immunity based on the first prong of the analysis on each of Plaintiff's claims, which I will address separately.

1.    **Excessive Force Claim**

Plaintiff says Officer Dunn and Lieutenant Meadows used excessive force against him during the August 23, 2023 incident.  Because Plaintiff was in custody at that time for a probation violation, his claims fall under the Eighth Amendment.  *Peterson v. Heinen,* 89 F.4th 628, 634 (8th

Cir. 2023).  As explained in *Peterson*, "the infliction of pain in the course of prison security measures . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id*. at 635.  Instead, the relevant question is whether there is evidence Officer Dunn and Lieutenant Meadows used force "maliciously and sadistically to cause harm" rather than in "a good-faith effort to maintain or restore discipline." *See Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010); *Peterson,* 89 F.4th at 635.  That is a high burden to meet.  And the factors I must consider when determining whether it has been satisfied are: (1) the objective need for force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the defendants; (4) any efforts by the defendants to temper the severity of the forceful response; and (5) the extent of  the plaintiff's injuries.  *Peterson,* 89 F.4th at 635; *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017).

Based on the undisputed facts and videos, it is clear that on August 23, 2023 Plaintiff was being verbally aggressive, defiant, and noncompliant with Officer Dunn's efforts to safely return him to his cell after pill call.  *See  Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (no genuine issue of fact when a video recording "blatantly contradicts" a party's assertions).  Only after Plaintiff continued to resist several direct orders did Officer Dunn put his hand under Plaintiff's arm to urge him to continue climbing the stairs.   It is well settled that prison officials do not violate the Eighth Amendment when using a limited amount of force to regain control of a recalcitrant inmate.  *See Wright v. Shelton,* No. 21-3270, 2022 WL 386238, at *1 (8th Cir. Feb. 9, 2022); *Burns v. Eaton,* 752 F.3d 1136, 1140 (8th Cir. 2014).  And nothing in the record suggests Officer Dunn acted in a malicious or sadistic manner when he put his hand under Plaintiff's arm and guided him up the stairs or that he intended for Plaintiff to fall.  Instead, it is clear he used a limited amount of force

in a good faith effort to restore discipline and that Plaintiff's fall was an accident, which is not a sufficient basis for imposing Eighth Amendment liability.

After the fall, the videos demonstrate Plaintiff refused numerous direct orders to get up and return to his cell, he did not have any visible injuries, and he did not exhibit any physical symptoms of pain. Defendant Meadows explains in her affidavit that she had to clear the stairs, for safety reasons, so that the other inmates in the disciplinary pod could have recreation time. (Doc. 50-2.) And Plaintiff has not offered any contrary evidence. Further, it is undisputed that moments before the fall, Plaintiff falsely accused Officer Dunn of punching him in the chest and pushing him while they walked towards the stairs. Given these falsehoods and Plaintiff's exaggerated behavior, I agree with Defendants that it appeared Plaintiff was malingering when he said he could not get up and walk to his cell. And I note that it was only after verifying from the medical records that Plaintiff did not have any preexisting injuries that Lieutenant Meadows and Officer Dunn decided to drag a resisting Plaintiff a short distance to his nearby cell. As previously stated, under the Eighth Amendment, the issue is not whether the amount of force used was reasonable or whether the defendants made "an error in judgment" when deciding, in the heat of the moment, what force to use to regain control of a defiant prisoner. *Wright,* 2022 WL 386238 at *1; *Jackson,* 866 F.3d at 974-75 ("a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives" is insufficient to defeat summary judgment). Instead, the issue is whether there is evidence the defendants acted "maliciously and sadistically." Given the videos and undisputed facts, I conclude no reasonable juror could find that either Lieutenant Meadows or Officer Dunn acted maliciously and sadistically on August 23, 2023. Accordingly, I conclude they are entitled to qualified immunity from the excessive force claim raised against them in their individual capacities.

### 2.   Failure to Protect Claim

Plaintiff says Sergeant Miller violated his constitutional rights by failing to stop Officer Dunn and Lieutenant Meadows from using excessive force against him.  Plaintiff is correct that jailers have a constitutional obligation, under the Eighth Amendment, to protect inmates from the excessive use of force by other officials.  *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012); *Krout v. Goemmer,* 583 F.3d 557, 565 (8th Cir. 2009).  However, because I find no evidence Lieutenant Meadows or Officer Dunn used excessive force against Plaintiff on August 23, 2023, Plaintiff's failure to protect claim against Sergeant Miller in his individual capacity fails as a matter of law.  *See Peterson,* 89 F.4th at 640.

### 3.   Inadequate Medical Care Claim

Plaintiff says LPN Williams, Officer Dunn, Sergeant Miller, and Lieutenant Meadows violated his Eighth Amendment rights by failing to provide him with any medical care after he fell down the stairs on August 23, 2023.  To proceed to trial on that claim, Plaintiff must have evidence: (1) he had an objectively serious need for medical care; and (2) Defendants subjectively knew of, but deliberately disregarded, that serious medical need. *See Peterson,* 89 F.4th at 640; *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021); *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018).

As to the first element, an objectively serious medical need is one that has been "diagnosed by a physician as requiring treatment" or one "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Presson v. Reed*, 65 F.4th 357, 366 (8th Cir. 2023); *De Rossitte v. Correct Care Sols., LLC.*, 22 F4th 796 (8th Cir. 2022).   Plaintiff says he broke his left ring finger and bruised his back, elbow, side, and knee during the August 23, 2023 fall.  But there is no medical evidence to support those assertions, which are clearly contrary to the videos and Plaintiff's behavior after the fall when he cleaned his cell, washed the walls, carried

10

papers in his left hand, walked up the stairs without difficulty, and did not mention any pain or seek medical treatment.   Nothing about that behavior or Plaintiff's physical appearance made it obvious to a lay person that he had objectively serious needs.   Further, it is undisputed Plaintiff refused medical care on August 25 and 29, 2023, thus making it impossible for medical staff to document whether he sustained any injuries.   *See Gibson v. Weber,* 433 F.3d 642, 646 (8th Cir. 2006) (a prisoner's refusal of medical care is relevant when determining whether summary judgment is appropriate on an inadequate medical care claim.)   And there is no evidence Plaintiff followed the medical staff's instructions to file sick call requests after reporting pain and injuries on August 30 and September 1, 2, and 4, 2023.   Instead, the only medical evidence in the record is that Plaintiff broke his finger after he fought two other inmates <u>eleven days after his fall</u> on September 11, 2023.   And during the September 11, 2023 examination, doctors did not detect any back, side, knee, or other injuries Plaintiff allegedly sustained during his fall.   Given the admitted facts and the lack of evidence here, I conclude a reasonable juror could not find that Plaintiff had an objectively serious medical need as a result of his August 23, 2023 fall.

Further, Plaintiff's evidence also falls short on the subjective component of deliberate indifference, which is a high threshold that goes well beyond negligence or gross negligence.   *Hall v. Higgins*, 77 F.4th 1171, 1179 (8th Cir. 2023); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).   To establish deliberate indifference, there must be evidence the defendants "recognized that a substantial risk of harm existed <u>and</u> knew that their conduct was inappropriate in light of that risk."   *Shipp,* 9 F.4th at 703 (emphasis in the original); *Smith v. Lisenbe,* 73 F.4th 596, 660 (8th Cir. 2023). This level of mental culpability is "akin to criminal recklessness."   *Presson,* 65 F.4th at 367.

LPN Williams says in her affidavit that on August 23, 2023, she did not see Plaintiff fall

or enter the pod after he fell.  (Doc. 44-3.)  And she says no one told her Plaintiff needed medical care on that day.  (*Id.*)  Given Plaintiff's false accusations and exaggerated behavior during the August 23, 2023 incident, there is no indication Officer Dunn, Lieutenant Meadows, or Sergeant Miller subjectively knew Plaintiff had sustained injuries requiring medical attention.  *See Rusness v. Becker Cnty., Minn.,* 31 F.4th 606, 616 (8th Cir. 2022) ("The threshold question is whether [a prisoner] manifested signs of a serious medical need that would be sufficiently obvious to jail staff without medical training").  And it is undisputed that none of them were personally involved in Plaintiff's medical care after August 23, 2023.  Finally and importantly, there is no medical evidence that Plaintiff was harmed by the eleven-day delay in being seen by doctors on September 11, 2023.  *See Presson,* 65 F.4th at 366-67 (a "prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis").

For these reasons, I conclude Officer Dunn, Lieutenant Meadows, and Sergeant Miller are entitled to qualified immunity from the inadequate medical care claims raised against them in their individual capacities.  And, for the same reasons, I conclude LPN Williams is entitled to judgment as a matter of law on the same claim. [6]

### 4.    Corrective Inaction & Failure to Train Claims

Plaintiff's corrective inaction and failure to train claims against Jail Administrator Edwards and Sheriff Miller in their individual capacities fail, as a matter of law, because there is

---

[6] As an employee of a for-profit medical provider, LPN Williams cannot raise the qualified immunity defense.  *Davis v. Buchannan Cnty, Mo.,* 11 F.4th 604, (8th Cir. 2021).  However, I conclude she is entitled to judgment as a matter of law because there is no evidence she violated Plaintiff's Eighth Amendment rights, which is the same conclusion I have reached as to the County Defendants under the first prong of the qualified immunity analysis.

no evidence of an underlying constitutional violation.  *See Brockinton v. City of Sherwood, Ark*, 503 F.3d 667, 673 (8th Cir. 2007); *Sims v. Lay,* Case No. 05-2136, 2007 WL 328769, *1 (8th Cir. Feb. 2, 2007).

      **B.**    **Official Capacity Claims**

      Qualified immunity does not apply to the claims Plaintiff has raised against the County Defendants in their official capacities, which are actually claims against the county itself. *Thurmond v. Andrews*, 972 F.3d 1007, 1013 (8th Cir. 2020); *Hall,* 77 F.4th at 1178.   To proceed with an official capacity claim against White County, there must be evidence that a constitutional violation resulted from: "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair,* 944 F.3d 704, 709 (8th Cir. 2019).   Because there is no evidence of an underlying constitutional violation, Plaintiff's official capacity claim against White County fails as a matter of law.  *See Stearns v. Wagner*, __F.4th __ *3,  2024 WL 4965989 (8th Cir. Dec. 4, 2024); *Thurmond,* 972 F.3d at 1013.

**V.**    **CONCLUSION**

      IT IS, THEREFORE, ORDERED THAT:

      1.    Defendants' Motions for Summary Judgment (Doc. 44, 48) are GRANTED, Plaintiff's claims against Defendants are DISMISSED with prejudice, and this case is CLOSED.

      2.    I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order would not be taken in good faith.

      DATED this 2nd day of January 2025.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

13